**J. D. WHITE, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Nov. 13, 1975.

Certiorari Denied by Supreme Court
Dec. 30, 1976.

Robert I. Livingston, Memphis, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., Richard Lodge, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Wayne Emmons, Asst. Dist. Atty. Gen., Memphis, for defendant-in-error.

## OPINION

DUNCAN, Judge.

The plaintiff in error, J. D. White, hereinafter referred to as the defendant, brings this appeal contesting his convictions of rape, and robbery by the use of a deadly weapon, for which he received penitentiary sentences of fifty-seven (57) years and ten (10) years respectively.

In the defendant's first and second assignments, he attacks the sufficiency of the evidence, contending that the verdicts are contrary to the law and to the evidence.

We summarize the evidence as follows:

At about midnight on October 13–14, 1973, the victim in this case, Cynthia Little, left a friend's house in Memphis, picked up her daughter at a nursery and was on a street trying to catch a ride to her home. She was offered a ride by the defendant, which offer she accepted. The defendant thereafter threatened her with a knife, beat her with his fists and then raped her, all of which occurred in the presence of her young daughter. He then robbed her of her purse and fourteen ($14.00) dollars. During the beating, the defendant hit the victim in the mouth, loosening two (2) of her teeth, one of which she spit out into the car. The victim accurately described the defendant's vehicle to the police and the defendant was arrested in the same vehicle on October 22, 1973. After signing a "Consent to Search" form, the defendant's vehicle was searched. The knife and the victim's tooth were found in the car. A dentist compared this tooth with the victim's remaining teeth and positively identified it as being her tooth. The victim identified the defendant in a lineup and at the trial.

Shortly after the rape, the victim related the facts and circumstances surrounding the rape to an occupant of a nearby house, James H. Taylor, and to her mother and a police officer, all of whom testified regarding the details of the victim's conversation with them.

A doctor examined the victim after the rape and testified that his tests indicated the presence of sperm in her vagina.

Evidence of two (2) prior rapes by the defendant was admitted at the trial for the purpose of showing identity and course of conduct. These two (2) offenses involved the rapes of Jane Marshall on August 8, 1973, and Patricia Ann Sharp on September 23, 1973. The evidence showed that the same *modus operandi* used in the instant case was also used in the two (2) prior rapes. Each of these prior victims similarly described the vehicle used by the defendant, and this description was the same as described by the victim in the present rape. Each testified as to his mannerisms, conversations and emotional state, all of which were similar to the testimony of the victim in the present case. At the trial, each of the prior victims identified the defendant as their assailant. Moreover, Sharp's ring and some strands of Marshall's hair were found in the defendant's vehicle. The evidence showing the defendant's guilt in these two (2) prior rapes was clear and convincing.

The defendant presented an alibi defense, stating that he was at home on the three (3) occasions when these rapes had occurred. He sought to bolster his alibi through the testimony of other witnesses, some of whom stated that his automobile was at home and not in operating condition at the time of the Jane Marshall rape on August 8, 1973. Significantly, the defendant testified that his car was in operating condition on that date. Other defense witnesses sought to account for the defendant's vehicle being elsewhere on September 23, 1973 (date of the Sharp rape), and on October 13–14, 1973 (date of the instant offense), rather than at the scene of these offenses. Little and Sharp both had testified that the defendant had his hair braided at the times they were raped. The defendant testified that at the time of his arrest, his hair was in a "bush" "like a Afro" and that it was not "plaited." A picture of the defendant made at the time of his arrest showed that his hair was braided or plaited, as testified to by Little and Sharp. The defendant testified that after he was arrested, a "secretary" at the police station plaited his hair. He denied all three (3) assaults and took a position that the police had framed all of the evidence against him. When asked why he thought Little had testified as she did, the defendant stated, "Well, I could say it's coming from the detective." In offering his explanation as to how Little's tooth got into his car, the defendant testified that the officers had said to him that they "was going to try and hide me and this is a good way," explaining that "hiding" meant to put him in the penitentiary for a long time. The defendant further testified that the officers were "God behind closed doors. They do what they want to do."

■ The evidence is compelling against this defendant in our opinion. The victim identified the defendant and his automobile; the defendant's identity was further established by the testimony of the two (2) prior rape victims, who also identified his motor vehicle; he was arrested in the same vehicle; the knife and the present victim's tooth were found in the car; and bloodstains were found in the defendant's car. The defendant admitted to the officers that he owned the subject automobile; that no one else drove it, and that he had the only key to the car.

■ The jury accredited the State's witnesses and rejected the defendant White's defense of alibi. The defense of alibi presents an issue of fact determinable by the jury, as the exclusive judges of the credibility of the witnesses testifying in support of that defense and of the weight to be given their testimony. *Green v. State*, Tenn.Cr.App., 512 S.W.2d 641 (1974), and cases cited therein.

"Rape is the unlawful carnal knowledge of a woman, forcibly and against her will." T.C.A. § 39–3701.

■ Cynthia Little was assaulted with a knife, beaten about the face, her teeth were broken and one tooth was knocked out. The record shows that the defendant had sexual intercourse with her, and that it was forcibly and against her will. She resisted to the extent necessary and reasonable under the circumstances. *King v. State*, 210 Tenn. 150, 357 S.W.2d 42 (1962).

■ Further, the robbery of Cynthia Little was "accomplished by the use of a deadly weapon." T.C.A. § 39–3901. The evidence showed that the defendant took the victim's purse and money after threatening her with a knife, and after brutally beating and raping her. The fact that the defendant did not threaten the victim with the knife at the actual moment of the robbery, nor that the victim could not see the knife at that exact time, are of no significance.

In *Burgin v. State*, 217 Tenn. 682, 687–88, 400 S.W.2d 539, 541 (1966), our Supreme Court, in quoting from 77 C.J.S. Robbery § 25 at 465, stated, in part, as follows:

"Further, the robber need not be armed at all times during the robbery in order to be guilty of robbery in the first degree; he is guilty of robbery in the first degree

if he arms himself or becomes armed with a deadly weapon at any time during the progress of the taking or while the robbery is being perpetrated, and in this connection the crime of robbery is not completed the moment the stolen property is in the possession of the robbers, but may be deemed to continue during their attempt to escape."

The evidence in this case shows that the defendant committed this assault by the use of a deadly weapon, and it remained in his possession, either on his person or in his automobile, throughout the commission of these offenses. The threat of death to the victim by the use of this weapon was ever present and ever real from the moment that the defendant pulled the knife on her until she was released from the vehicle.

The facts in this case, as well as the law pertaining thereto, supports the defendant's convictions of rape, and robbery by the use of a deadly weapon.

 In considering and passing on assignments of error challenging the sufficiency of the evidence to warrant and sustain the verdict of the jury in criminal cases, we are bound by the law that a guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. Such a verdict removes the presumption of the innocence of the accused which stands as a witness for him until he is convicted, and raises a presumption of his guilt upon appeal, and he has the burden upon appeal of showing that the evidence preponderates against the verdict and in favor of his innocence. *Gulley v. State*, 219 Tenn. 114, 407 S.W.2d 186 (1966); *Jamison v. State*, 220 Tenn. 280, 416 S.W.2d 768 (1967); *Chadwick v. State*, 1 Tenn.Cr.App. 72, 429 S.W.2d 135 (1968).

The evidence does not preponderate against the verdicts in these cases and the assignments on the evidence are overruled.

In his final assignment of error the defendant contends that the trial court erred in allowing the State to introduce evidence of the two (2) prior rapes of Patricia Ann Sharp and Jane Marshall.

The State offered such evidence for the stated purpose of showing the defendant's identity and course of conduct. The judge allowed the evidence to be admitted but cautioned the jury at the time, as well as in his written charge, that such could only be considered by the jury for these stated purposes.

The similarities of the three (3) rape offenses are so great that there can be no question but that the defendant committed all three (3) rapes. In addition to the evidence heretofore covered under the first two (2) assignments, we would add that all three (3) victims testified that the defendant had a knife; that at first, he had them in the front seat of the automobile, then made them get into the back seat; that he made them disrobe; that he discussed drugs with each of them; that each of them was allowed to use Kleenex; that both Little's and Marshall's glasses were removed by the defendant; that Little and Sharp were both beaten by the defendant; and that in addition to other similarities, the defendant rode around with each of the three (3) victims after the rape, then let them out on the street, taking the purse of each one.

Further, each of the three (3) victims identified the defendant's vehicle, particularly noticing that there was no inside door handle on the passenger's door and that the hole created had been covered by silver colored tape. Each victim gave a similar description of the defendant and his vehicle to the police immediately after the occurrence of the particular assault. Each of the three (3) victims identified the defendant's vehicle at the police station after he had been arrested.

Both Little and Sharp stated that the defendant had braided hair at the time of their attacks, with Marshall stating that the defendant had an Afro style at the time of her assault. Sharp and Marshall identified

the defendant's watch and both remembered and described certain of the defendant's mannerisms and his emotional state, which were similar to each other and also similar to that related by Little. The defendant talked about race and inter-racial sexual activity to Sharp and Marshall.

Sharp's ring, which had been taken by the defendant, was found in his car. Also strands of Marshall's hair, identified by an expert from the F.B.I., were found in the defendant's vehicle.

■ The general rule is that evidence of another crime is not admissible to prove a defendant's guilt in a case on trial, but there are several exceptions to the rule. In *Wrather v. State*, 179 Tenn. 666, 169 S.W.2d 854 (1943), the court, in enumerating these exceptions to this general rule, stated:

"Among the exceptions recognized to this general rule are when the evidence is introduced to prove identity, knowledge as reflecting an intent, plan or system, a course of conduct, or of course, when part of the res gestae."

■ In the case before us, we are of the opinion that the evidence of which complaint is made clearly falls within the exception regarding identity.

In *Warren v. State*, 178 Tenn. 157, 161–64, 156 S.W.2d 416, 418–19 (1941), the trial court allowed proof of a robbery that occurred under similar circumstances to the one on trial, which robbery had occurred a few nights later. It is noted that in the *Warren* case, several witnesses had testified as to the identity of the defendant. In holding that the evidence was properly admitted, as going to the question of identity, our Supreme Court said:

"The attorney-general in his brief in this Court concedes that as a general proposition evidence of other crimes is inadmissible, but relies upon a well recognized exception applicable where, as in the instant case, the only question at issue is the identity of the party committing the crime for which the accused is on trial.

He submits that in cases of this kind such evidence is admissible and quotes the following from a leading law text book authority, 20 Am.Jur. 292, 293:

" 'The general rule that evidence of separate and independent crimes is inadmissible to prove the guilt of a person upon trial for a criminal offense is subject to a well-defined exception with respect to proof of the identity of the accused. The broad rule is that where evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation, it is admissible, in spite of the fact that it tends to show that the accused is guilty of other crimes for which he is not on trial. This rule is applied in a wide variety of cases, such as arson, burglary, homicide, larceny, liquor law violations, robbery, and many other instances. It is permissible, in those instances where evidence is admitted of the commission of another similar crime for the purpose of showing identity, for the accused to introduce in evidence the record of a court showing his trial and acquittal of such other crime.

" 'It is clear, however, that proof of the commission of another crime is not properly admitted simply for the purpose of identifying the defendant unless it is absolutely necessary to establish identification as an element of the crime. Generally speaking, it is only where the identity of the accused is not definitely connected with the offense on trial that other offenses may be introduced to connect and identify him with the case on trial. If the identity of the accused is established by other evidence and is therefore no longer an issue, it is improper to admit evidence of other crimes on the theory of proving identity. It is necessary also for such evidence to be admissible that there be such a logical connection between the crimes that proof of one will naturally tend to show that the accused

is the person who committed the other. However, where the sole issue is the identity of the accused, the evidence on that question by the state may properly be permitted to cover a wide range, and in a measure the rigid rules of evidence will be relaxed.'

"We find this text supported by citation of a very large number of cases from various jurisdictions. We also find annotations in 3 A.L.R. 1540, 22 A.L.R. 1016, 27 A.L.R. 357, and 63 A.L.R. 602, to the same effect. In introducing a discussion of the subject of the 'admissibility of evidence of other offenses in criminal prosecution to prove identity of defendant,' the annotator in 3 A.L.R. 1540, says:

" 'To the general rule that evidence of separate and independent crimes is inadmissible to prove the guilt of a person on trial for a criminal offense there are several exceptions, which are as uniformly accepted by the courts as the rule itself. Among these exceptions is that, where evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation, it is admissible, in spite of the fact that it tends to show the guilt of the accused of other crimes for which he is not on trial.'

"The annotator in 27 A.L.R. 358, introducing a supplementary annotation on the same subject, thus comments:

" 'The recent cases sustain the general rule stated in the original note in 3 A.L.R. 1540, and reiterated in the note in 22 A.L.R. 1016, that evidence of an independent and separate crime, while inadmissible to prove the guilt of one on trial for a criminal offense, is admissible where such evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation, although such evidence may also tend to show the guilt of the accused.'

"We think the exception to the rule thus stated is soundly based and has been properly applied in this case. The two main conditions of its application have been met: (1) The proof shows such similarity in the circumstances of the commission of the two offenses as to afford evidence of the identity of the offender, and (2) while direct evidence was presented that the accused was the robber, the defendant's guilt was denied and an alibi insisted upon, so that this testimony of a similar separate offense was pertinent and reasonably required to make certain before the jury the identification of the accused."

The instant case is somewhat similar to the case of *Webster v. State*, 1 Tenn.Cr. App. 1, 17–20, 34, 425 S.W.2d 799, 806–07, 812–13 (1967). In that case, the defendant was convicted of abortion, and evidence of other abortions performed by the defendant was admitted. The facts and circumstances regarding the prior abortions were similar to the abortion case on trial. The court in *Webster* exhaustively reviewed authorities regarding the propriety of the admission of other offenses for the purpose of proving identity and course of conduct. In holding that the evidence concerning the prior abortions was properly admitted, the court, quoting from *Harris v. State*, 189 Tenn. 635, 639–42, 227 S.W.2d 8, 10, 11 (1950), said:

"No objection can be raised to admitting proof of independent crimes when such proof is necessary to establish identity. *Warren v. State*, supra; *Mays v. State*, supra [145 Tenn. 118, 238 S.W. 1096]; 20 Am.Jur., Sec. 312, pp. 292–293; 22 C.J.S., Criminal Law, § 684, p. 1097. And this is true whether the proof of independent crime is incidental to the establishment of identity (*Sartin v. State* [75 Tenn. 679], supra; *State v. Becton*, supra [66 Tenn. 138]) or is the basis thereof. *Warren v. State*, supra.

"Sometimes to establish identity it becomes relevant to show similarity of the plan or method by which more than one crime has been accomplished. Such instances should be carefully distinguished from those in which evidence of plan or

method is offered to establish guilty knowledge or to negative the likelihood of fortuity, for the tests of direct relevancy are by no means the same.

. . . . .

"It may be, however, that a particular strategem or method has such unusual particularities that reasonable men can consider that it would not likely be employed by different persons. *Wrather v. State,* supra. Many men commit murder, but Jack the Ripper used his knife in a manner so peculiar that when his crimes were viewed together there could be little doubt that they were committed by the same man. Merely the fact, however, that a series of such crimes may be committed with a knife will not render them unusual enough to identify the perpetrator of one as the perpetrator of the others. Sometimes to establish the identity of a sexual pervert, evidence of an unusual perversion has been received, but this is no more than the application of a corollary of the rule above stated, that a defendant's methods in the commission of a crime may be sufficiently unusual to amount to a signature. *Barnett v. State,* 104 Ohio St. 298, 135 N.E. 647, 27 A.L.R. 351.

"This court has said that where the sole question is the identity of the accused, the State may properly be permitted to cover a wide range in seeking proof of other crimes which cannot be reasonably believed to have been committed except by the same criminal who committed the offense under investigation, and thereby establish the identity of the person responsible. *Warren v. State,* supra."

Finally, in *Webster* the court concluded: "Under the trial court's cautionary instruction, quoted above, we think the jury was properly permitted to consider all of these circumstances and that they could by so doing establish the identity of the defendant as the person who committed the abortion upon Kathryn Clayborn as charged in the indictment."

In *Harris v. State, supra,* the court held that evidence of a rape by the defendant that occurred a week earlier was improperly admitted in evidence. However, the basic reason for so holding was because the facts and circumstances showed little similarity between the two rapes and provided scant grounds from which to draw an inference that the crimes were committed by the same person. The court said "the methods pursued" in the two rapes involved therein "were not so peculiar as to render it unlikely that lustful men bent upon the crime of rape might not have pursued identical methods."

Our situation in the case, *sub judice,* is entirely different. The methods pursued here in all three (3) rapes are so strikingly similar that there can be no other conclusion than the fact that the defendant committed all three (3) rapes.

In *Snowball v. State,* Tenn.Cr.App., 477 S.W.2d 240, 244 (1971), this Court recognized the general rule that evidence of other crimes are generally inadmissible but then reviewed the instances where there is an exception to the general rule. The Court said:

"But the rule has its well-known exceptions. Such evidence is admissible when it is relevant to prove some other material issue on trial; for instance, when it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the other; and (5) the identity of the defendant on trial. *Pruitt v. State* [3 Tenn.Cr.App. 256], 460 S.W.2d 385, and authorities therein cited."

In the case of *Graybeal v. State,* 3 Tenn. Cr.App. 466, 468–69, 463 S.W.2d 159, 160 (1970), our Court approved the admission of another crime against the defendant as going to the question of identity.

In *Graybeal,* the proof showed that at about 7:15 p. m., November 9, 1968, Gray-

beal, armed with a .410 gauge shotgun, held up and robbed Mrs. Joyce King, an employee of the Shop and Go Market in Knoxville. He was wearing a red cap, white gloves, and was driving a greenish blue or turquoise Chevrolet automobile. Although he had a white handkerchief over his face, Mrs. King positively identified him. The defendant did not testify but offered proof of an alibi. In rebuttal of this alibi evidence, the State introduced over his objection the testimony of William and Kathleen Hickman that about 7:20 or 7:30 p. m. that day the defendant came to their place of business in a bluish green Chevrolet, wearing a red cap and gray jacket, with a white handkerchief over his face and robbed them with a shotgun or rifle. Both identified Graybeal. When he backed out the door, Mrs. Hickman says he pulled the handkerchief off or it fell down and she saw him.

The *Graybeal* court in an opinion by the Honorable Mark A. Walker, Judge, stated:

"The trial judge admitted the proof of the second crime on the question of identity because the defendant had raised the defense of an alibi. The defendant contends this was inadmissible, particularly that a subsequent offense is not admissible on the question of identity.

"This evidence was material on the issue raised by the defense of alibi. Evidence that is material and relevant is never rendered incompetent because it may tend to show guilt of another offense, even though such evidence be prejudicial to the defendant. See *Jones v. State,* 200 Tenn. 553, 292 S.W.2d 767; *Liakas v. State,* 199 Tenn. 298, 286 S.W.2d 856. The fact that it occurred subsequent to the crime charged does not make it inadmissible."

It might be noted that the Honorable Robert K. Dwyer, Judge, member of the present panel, was a member of the *Graybeal* panel and concurred in Judge Walker's opinion.

In *Caruthers v. State,* 219 Tenn. 21, 26–28, 406 S.W.2d 159, 161–62 (1966), the de-

fendant was accused of robbing one James Wilson Coffelt on November 22, 1964. The victim identified the defendant at the trial. The defendant attempted to establish the defense of an alibi. Evidence was admitted that on the preceding day the defendant had robbed a laundry. In spite of the fact that the similarities in the *modus operandi* of the two robberies were meager, the court still held that proof of the prior offense by the defendant was admissible as going to the question of identity.

We quote from that Supreme Court opinion, as follows:

"The question raised by this assignment of error is the propriety of the trial court's admission into evidence of the testimony of Mrs. Head, relating to a prior crime allegedly committed by the defendant. The cases in this State establish that such evidence is admissible if (1) it is to be used to prove identity, knowledge as reflecting an intent, a plan or system, a course of conduct or is a part of the *res gestae* of the crime charged, and (2) the evidence is 'clear and convincing' that the defendant is the person who committed the prior offense. See *Wrather v. State* (1943) 179 Tenn. 666, 169 S.W.2d 854; *Mays v. State* (1921) 145 Tenn. 118, 238 S.W. 1096; *Harris v. State* (1950) 189 Tenn. 635, 227 S.W.2d 8; *Brenner v. State* (1965) 217 Tenn. 427, 398 S.W.2d 252.

"As stated before, the defendant attempted to raise the defense of alibi. In raising this defense, the defendant naturally questions the identification by Mr. Coffelt of the defendant as the man who robbed him. Thus, the question of identity constitutes the crucial point in this case, and the testimony of Mrs. Head was introduced to support Mr. Coffelt's identification of the defendant as the man who committed the offense involved in this case. It therefore is apparent that the testimony of Mrs. Head was properly admitted by the trial court if there was 'clear and convincing' evidence that the defendant was the person who committed

the prior crime. The following quotation from *Wrather v. State,* supra, sets out the test to be applied to determine admissibility, as follows:

" '(4) Without going so far as to hold, with some of the Courts, that the proof of the independent crime must be "beyond a reasonable doubt," we approve the rule that, to render evidence of an independent crime admissible, the proof of its commission, and of the connection of the accused on trial therewith, must be not "vague and uncertain," but clear and convincing. Obviously, an absolute essential is that (1) a former crime has been committed, and (2) committed by the identical person on trial. Only thus can identification, or other proof of guilt, of the accused in the pending case be aided by evidence of the independent crime. And this limitation upon admissibility applies equally to all the exceptions to the general rule excluding evidence of other crimes, whether introduced to prove identity, or for any other purpose.'

"This quotation establishes, beyond doubt, that in Tennessee it does not have to be established 'beyond a reasonable doubt' that the defendant committed the prior crime for evidence of the prior crime to be admissible. In this case, the testimony of Mrs. Head was unequivocal. The fact that the defendant had been previously tried for the prior crime, and such trial resulted in a mistrial, in no way affects the admissibility of Mrs. Head's testimony in this trial; for the test for conviction is clearly distinguished by the foregoing quotation from the test for admissibility. Certainly the testimony of Mrs. Head was clear and convincing evidence that the defendant committed the prior offense about which she testified."

In the instant case, and from the proof to which we have heretofore referred, the evidence offered by the State to show the defendant's guilt in the two (2) prior rape cases is not only clear and convincing as per the test of *Caruthers v. State, supra,* but

actually shows his guilt of those offenses beyond a reasonable doubt.

The defendant cites as authority the case of *Briggs and Taylor v. State,* Tenn.Cr. App., March 6, 1974—Jackson. It is noted that certiorari was granted by the Supreme Court in this case on December 2, 1974, and the case is now pending in that Court.

In the *Briggs* case, which involved a robbery, this Court held that it was error for the trial court to admit evidence of a subsequent robbery to show *modus operandi* and identity. However, the *Briggs* case is factually distinguishable from the instant case. The similarities of the two robberies involved in *Briggs* were slight, and the "clear and convincing" evidence of the defendant's guilt of the subsequent robbery was not present. The defendants did not testify in *Briggs* and no effort was made to advance a position that the police were framing them or fabricating proof as to their identities.

However, in the case at bar, there is a *modus operandi* that is almost letter perfect in all three (3) of the rapes; the evidence of the defendant's guilt in all three (3) cases is "clear and convincing"; the defendant contested his identity throughout the trial and forcefully advanced a position that the police were framing him and were fabricating evidence against him.

Thus, we conclude that regardless of whatever decision the Supreme Court may ultimately reach in the *Briggs* case, such would not be controlling in the instant case in view of the different set of facts and circumstances present.

In the case at bar, we conclude that the evidence of these prior rapes was admissible as going to the question of the defendant's identity.

It is true that there was considerable evidence of the defendant's identity, *ex parte* the testimony regarding the prior rapes. However, the issue of the defendant's identity was ever present throughout the case until the question was resolved by the jury.

The defendant denied that he raped the victim in the instant case. He set up a rather elaborate alibi, offering numerous witnesses in an attempt to support it. He offered witnesses to try and prove that his automobile was elsewhere, rather than at the scene of the crime on this occasion. Further, as heretofore stated, the defendant attempted to advance a position that he was the victim of some colossal frame up by the police and that they had planted and manufactured the evidence against him. If the jury had decided to accredit the testimony of the defendant and his witnesses, then the identity question would have been resolved against the State.

■ The question of identity is not one to be decided by the court. Such a question is within the sole province of the jury. The identification of the defendant as the person who committed the crime for which he is on trial is a question of fact for the determination of the jury, upon consideration of all the competent proof. *Stubbs v. State,* 216 Tenn. 567, 393 S.W.2d 150 (1965); *Shye v. State,* Tenn.Cr.App., 506 S.W.2d 169 (1973).

■ The State has the burden to prove a defendant's identity. There is no way that it can be said that one eyewitness or one victim, or any one piece of evidence, alone or in combination, will prove identity to the jury's satisfaction beyond a reasonable doubt, when, after the State rests, a defendant may present one, two or several alibi witnesses to show that the State's proof is incorrect.

We find that no error was committed by the introduction of the testimony of which complaint is made and we overrule this assignment.

We find no errors in this record and we affirm the judgments of the trial court.

JOHN D. TEMPLETON, Special Judge, concurs.

DWYER, J., concurs in separate opinion.

DWYER, Judge (concurring).

While I fully concur with our brethren in their conclusion as to the competency of the evidence of other crimes, some distinction in rationale should be observed.

It is true that the issue of identity is a question of fact for the jury and not for the court. It should be noted, however, that clearly a question of law is first advanced when the court is called upon to decide if the other independent crime(s) is admissible on the question of identity as an exception to the general rule that other crimes are not admissible. The general guidelines as to the admissibility of other crimes as substantive evidence on the issue of identity are, I think, twofold: (1) there need be such similarity (uniqueness) in the circumstances of the commission of the offenses; or, such connection between the offenses, see *Pruitt v. State,* 3 Tenn.Cr.App. 256, 460 S.W.2d 385, 386, as to afford evidence of the identity of the offender as being the accused in the indictment crime; and (2) the admission of the other crimes need be necessary to aid in establishing identity, see *Warren v. State,* 178 Tenn. 157, 161–64, 156 S.W.2d 416, 418–19; *Harris v. State,* 189 Tenn. 635, 639–42, 227 S.W.2d 8, 10, 11. Such judicial determination of admissibility is a necessary safeguard so as to screen out incompetent evidence which, otherwise, if admitted, would leave the defendant open to being unfairly tried and convicted on other than the indictment crime, see *Pruitt v. State,* supra.

As noted in the majority, it is true that I concurred in *Graybeal v. State,* 3 Tenn.Cr. App. 466, 463 S.W.2d 159. A vast distinction exists, however, in that case and this one at hand. In *Graybeal,* the other crime was introduced in rebuttal of the defendant's asserted alibi defense and to impeach the testimony of the alibi witnesses. The *other crime* was relevant for it was proven to have occurred during the same time span on the same date as the indictment crime was alleged and for which alibi was offered.

I, therefore, can see the relevancy of the additional crime to impeach his defense.

However, *Caruthers v. State,* 219 Tenn. 21, 406 S.W.2d 159, appears to teach that *denial* and *alibi* make relevant other crimes which are not *similar* or *connected* to the indictment crime. I think the *mere fact* that all *victims* identified the defendant alone is not the key to relevancy and does not satisfy the similarities requirement; nor is denial and alibi the key to relevancy, see *Harris v. State,* supra.

I concur that the similarities found in this record between the other crime and the indictment crime placed a *mark* upon the defendant as being the perpetrator of the crime for which he was tried, and when coupled with the fact that identity was a crucial issue, the evidence of the independent crime was, I think, *relevant* on that issue, and importantly, does not go beyond the boundaries of *Warren v. State,* supra, see *Harris v. State,* supra.

With the above observations, I concur in the affirmation of this judgment.