IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

SEPTEMBER 1997 SESSION

FILED

January 15, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | |
| | ) | No. 02-C-01-9612-CR-00447 |
| | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | W. Fred Axley, Judge |
| | ) | |
| | ) | (Rape) |
| COLLIER V. HARRIS, | ) | |
| | ) | |
| APPELLANT. | ) | |


FOR THE APPELLANT:

W. Mark Ward
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN 38103
(Appeal Only)

Ronald S. Johnson
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN 38103
(Trial Only)

OF COUNSEL:

A C Wharton, Jr.
Chief Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN 38103

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Kenneth W. Rucker
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103

Edgar A. Peterson, IV
Assistant District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103


OPINION FILED:_____


CONVICTION AFFIRMED; REMANDED FOR A NEW SENTENCING HEARING


Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Collier V. Harris (defendant), was convicted of rape, a Class B felony, by a jury of his peers. The trial court, finding the defendant to be a multiple offender, imposed a Range II sentence consisting of confinement for twenty (20) years in the Department of Correction. This sentence is to be served consecutively to a sentence for felony murder in an unrelated case. The defendant presents four issues for review. He contends the trial court committed error of prejudicial dimensions by (a) ruling the state could impeach the defendant with a prior conviction for first degree murder; (b) allowing the state to introduce the testimony of two other women who were also raped by the defendant; (c) instructing the jury it could consider the two rapes to show intent, motive, guilt, and knowledge; and (d) finding him to be a multiple offender and imposing a Range II sentence. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this court that the defendant's conviction for rape should be affirmed. However, this cause is remanded to the trial court for a new sentencing hearing for the reasons set forth in this opinion.

The defendant does not challenge the sufficiency of the evidence. However, a recitation of the salient facts is necessary for an understanding of the issues presented for review.

The victim, Angela Phillips, lived in a subdivision near the intersection of Navy Road and Bethel Road in Millington, Tennessee. During the early morning hours of October 11, 1993, the victim walked to a nearby service station to purchase a bag of potato chips. The defendant, whom she had observed driving through her neighborhood on prior occasions, offered her a ride from the service station to her home. She did not know the defendant. While she only lived a short distance from the station, she accepted the defendant's invitation because it was raining and cold.

The defendant drove his vehicle away from the victim's residence. He subsequently drove his vehicle to Center College Road, drove into a field, and parked behind a grove of trees. He exited the vehicle, walked to the passenger side of the vehicle, and pulled the victim from the vehicle. He then placed his arm around her neck and began squeezing.

The victim became dizzy and began losing her breath. The defendant told the victim to pull her pants down. He then forced her to bend over in front of him. He told the victim, "I'm going to teach you bitches something." The defendant then vaginally penetrated the victim with his reproductive organ from behind her as he held her neck.

Subsequently, the victim was taken by law enforcement authorities to the Memphis Sexual Assault Resource Center. A nurse took samples of the fluids from the genital area of the victim's body. Later, blood and hair samples were taken from the defendant. All of the samples were submitted by the authorities for DNA testing. The samples taken from the victim revealed the presence of sperm. The DNA profile of the sperm found in the victim was consistent with the DNA profile of the defendant. The DNA expert testified the profile for the sperm found in the victim occurs with a frequency of approximately one in 467 million Caucasians and one in 50 million African-Americans. The defendant is an African-American.

The victim identified the defendant as the person who had raped her. The state presented two other women who testified the defendant raped them. One was raped on November 21, 1993, and the other was raped in June of 1991.

The defendant did not testify in support of his defense. Nor did he present any other witnesses.

## I.

The State of Tennessee gave the defendant notice it would use his prior convictions to impeach him if he opted to testify during the trial. See Tenn. R. Evid. 609(a)(3). The notice alleged the following convictions would be used to impeach the defendant: assault, unlawful possession of a controlled substance, possession of a weapon, and murder in the perpetration of a theft. When the state rested its case-in-chief, the trial court conducted what is commonly referred to as a "Morgan hearing."

The assistant district attorney general candidly admitted the three misdemeanor convictions could not be used to impeach the defendant. However, he argued the felony murder conviction could be used to impeach the defendant if he testified during the trial. The defendant objected to the use of this felony conviction to impeach him. He argued

rape and murder in the perpetration of a felony were both crimes of violence; and the probative value of this conviction for impeachment purposes was far outweighed by its prejudicial effect. The trial court, stating the underlying crime was theft, ruled the state could use the conviction to impeach the defendant.

In this court, the defendant contends "the trial judge erred in that the probative value of the first degree murder conviction on the issue of Appellant's credibility did not outweigh the unfair prejudicial effect that allowance of the impeachment would have had on the substantive issues of identity and consent." He argues a conviction for first degree murder has "little probative value" and "little or no bearing on credibility" because the mens rea requirement for this offense is "recklessness." The state contends the trial court properly ruled that the first degree murder conviction could be used to impeach the defendant if he opted to testify during the trial.

## A.

The State of Tennessee must establish certain prerequisites before it may use a prior conviction to impeach an accused in a criminal prosecution. In State v. Farmer, 841 S.W.2d 837 (Tenn. Crim. App.), per. app. denied (Tenn. 1992), this court said:

> The State may use a prior adult conviction to impeach the testimony of an accused in a criminal prosecution if: (a) the conviction was for a crime that is punishable by death or imprisonment in excess of one (1) year or a misdemeanor involving dishonesty or false statement, Tenn. R. Evid. 609(a)(2), (b) less than ten (10) years has elapsed between the date the accused was released from confinement and the commencement of the prosecution, Tenn. R. Evid. 609(b), (c) the State gives reasonable written notice of the particular conviction or convictions it intends to use to impeach the accused prior to trial, Tenn. R. Evid. 609(a)(3), and (d) the trial court finds that the probative value of the felony or misdemeanor on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609(a)(3).

841 S.W.2d at 839.

In this case, the parties agree the first three prerequisites set forth in Farmer, i.e., requirements (a) through (c), have been satisfied. Thus, this court must determine whether

4

the trial court reasonably concluded that the probative value of the prior felony murder conviction on the question of the defendant's credibility outweighed its prejudicial effect upon the substantive issues presented by the evidence: the identity of the defendant as the person who raped the victim and the consent of the victim to the sexual penetration.

## B.

It is a well-established rule of law that the question of whether a prior conviction can be used to impeach the accused addresses itself to the sound discretion of the trial court. State v. Sheffield, 676 S.W.2d 542, 548-49 (Tenn. 1984); State v. Roberts, 943 S.W.2d 403, 408 (Tenn. Crim. App.), per. app. denied (Tenn. 1996); State v. Wiggins, 729 S.W.2d 291, 295 (Tenn. Crim. App.), per. app. denied (Tenn. 1987). An appellate court will not interfere with the exercise of this discretion absent clear abuse appearing on the face of the record. See State v. Van Tran, 864 S.W.2d 465, 477 (Tenn.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1577, 128 L.Ed.2d 220 (1994); State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); State v. Baker, 751 S.W.2d 154, 163 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

Appellate review of this issue is limited to a determination of whether the trial court abused its discretion by permitting the use of the felony murder conviction to impeach the defendant. Roberts, 943 S.W.2d at 408. This court is not permitted to re-weigh or reevaluate the probative value versus the prejudicial effect of the prior conviction on the substantive issues which must be resolved by the trier of fact. Id.

## C.

The Tennessee Rules of Evidence recognize two classes of prior convictions to impeach an accused if the prior convictions meet the criteria set forth in Rule 609. The first class of prior convictions encompasses felony offenses which are punishable by death or imprisonment in excess of one (1) year. Tenn. R. Evid. 609(a)(2). The second class of prior convictions includes misdemeanor offenses involving dishonesty or false statement.

Id. See Farmer, 841 S.W.2d at 839. There is no requirement that a felony conviction involve dishonesty or false statement before the conviction may be used to impeach the accused. State v. Tune, 872 S.W.2d 922, 927 (Tenn. Crim. App.), per. app. denied (Tenn. 1993). In Tune this court said "a crime committed by the accused which is punishable by death or imprisonment in excess of one year may be admissible in order to attack his credibility, regardless of whether the crime involved dishonesty or false statements. . . ." However, both classifications of prior convictions are subject to the probative value versus prejudicial effect requirement of Rule 609. State v. Jerry Lee Finch, Lauderdale County No. 02-C-01-9309-CC-00224, 1995 WL 334350 (Tenn. Crim. App., Jackson, June 7, 1995), per. app. denied (Tenn. November 5, 1995).

The appellate courts have upheld the use of crimes involving violence to impeach an accused when the prerequisites contained in Rule 609 have been met. In Sheffield, the supreme court upheld the use of a voluntary manslaughter conviction to impeach the accused in a capital first degree murder prosecution. 676 S.W.2d at 549-50. In State v. Ratliff, 673 S.W.2d 884, 885 (Tenn. Crim. App.), per. app. denied (Tenn. 1984), this court ruled a prior conviction for assault with intent to commit second degree murder could be used to impeach the accused in a prosecution for concealing stolen property. In State v. Ronnie Dunn, Washington County No. 03-C-01-9102-CR-00042, 1992 WL 167349 (Tenn. Crim. App., Knoxville, July 21, 1992), rev'd and modified, Washington County No. 03-S-01-9211-CR-00104, 1993 WL 339919 (Tenn. Sept. 7, 1993) (modifying the conviction to second degree murder), this court held the use of a prior first degree murder conviction to impeach the accused was permissible in a prosecution for felony murder. In State v. Burl Lakins, Claiborne County No. 32, 1991 WL 84947 (Tenn. Crim. App., Knoxville, May 24, 1991), this court held a prior conviction for second degree murder could be used to impeach the accused in a prosecution for aggravated assault.

This court has also upheld the use of crimes involving violence to impeach an accused charged with a sex-related offense when the prerequisites contained in Rule 609 have been met. In Wiggins, this court held that prior convictions for voluntary manslaughter and possession of a controlled substance for resale could be used to impeach the accused in a prosecution for aggravated rape and aggravated kidnaping. 729

6

S.W.2d at 294. State v. Blanton, 926 S.W.2d 953, 959-60 (Tenn. Crim. App.), per. app. denied (Tenn. 1996), this court ruled a prior conviction for second degree murder could be used to impeach Blanton in a prosecution for aggravated sexual battery if he opted to testify in support of his defense. In State v. Daniel Strong, Davidson County No. 88-82-III, 1989 WL 34942 (Tenn. Crim. App., Nashville, April 12, 1989), per. app. denied (Tenn. July 3, 1989), this court approved the use of a prior conviction for malicious shooting to impeach an accused in a prosecution for assault with intent to commit murder first degree and assault with intent to commit rape.

## D.

Neither the Tennessee Rules of Evidence nor the appellate courts have established a brightline test or rigid guidelines for determining whether the probative value of a prior conviction outweighs its prejudicial effect upon the substantive issues. Sheffield, 676 S.W.2d at 548-49; Tune, 872 S.W.2d at 927; Wiggins, 729 S.W.2d at 295. In Sheffield, the supreme court set forth the federal "guidelines that have [e]volved" for determining whether the probative value of a prior conviction outweighs its prejudicial effect. In holding that a prior conviction for voluntary manslaughter could be used to impeach the accused in a capital murder prosecution, the court said:

> While examination of those [federal] factors may be useful to trial judges in some cases, we decline to adopt them. We think it inappropriate to introduce the rigidity that inevitably accompanies the mandated use of express guidelines for the exercise of judicial discretion involving the weighing and balancing of elusive concepts.

676 S.W.2d at 548.

In Wiggins this court, acknowledging the supreme court's ruling in Sheffield, stated:

> In the final issue, the defendant says that the trial court erred in permitting evidence of his prior conviction for voluntary manslaughter and possession of [a] controlled substance for resale. This evidence was admitted for impeachment purposes. He says that since these offenses did not involve dishonesty or false statement, the prejudicial effect of this

> evidence outweighed probative value and that the trial judge only gave "lip service" to the law in weighing prejudicial effect against probative value. . . .

> * * * *

> [O]ur Supreme Court has rejected the adoption of guidelines to be followed by trial judges in weighing probative value against prejudicial effect with regard to evidence of convictions of crimes that do not involve dishonesty or false statement.

> * * * *

> We do not find that the trial judge abused his discretion in holding that probative value outweighed prejudicial effect with regard to evidence of these two prior convictions. We therefore overrule this issue.

729 S.W.2d at 294-95.

### E.

The mere fact a prior conviction of the accused is identical or similar to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness. See State v. Miller, 737 S.W.2d 556, 560 (Tenn. Crim. App.), per. app. denied (Tenn. 1987). Nevertheless, the trial court, when considering an identical or similar offense, should (a) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction," and (b) "analyze the relevance the impeaching conviction has to the issue of credibility" when weighing the probative value of the conviction against its prejudicial effect. Farmer, 841 S.W.2d at 839; N. Cohen, et al., Tennessee Law of Evidence, § 609.9 at 375 (3d ed. 1995).

In this case, the defendant admits the crimes of felony murder and rape are not identical or similar in nature. However, the defendant asserts the prejudicial effect of the felony murder conviction outweighed its probative value because the two offenses are crimes of violence. As previously stated, crimes of violence may be used to impeach an accused in a sex-related offense, when, as here, all of the prerequisites of Rule 609 are met. Blanton, supra; Wiggins, supra; Strong, supra. In short, when the impeaching offense and the offense for which the accused is being tried are not identical or similar in nature, the mere fact both are crimes of violence will not result in the exclusion of the impeaching offense solely on the grounds the two offenses involve violence. Blanton, 926

8

S.W.2d at 959-60. As this court said in <u>Blanton</u> and <u>Strong</u>, "felonies of a violent nature reflect on the moral character of a witness," and, as a result, "this evidence is not usually without probative value." <u>Blanton</u>, 926 S.W.2d at 960; <u>Strong</u>, slip op. at 2.

The defendant's reliance upon <u>State v. Farmer</u>, <u>supra</u>, and <u>Long v. State</u>, 607 S.W.2d 482, 485-86 (Tenn. Crim. App.), <u>per</u>. <u>app</u>. <u>denied</u> (Tenn. 1980), is misplaced. These cases are distinguishable upon the facts. Both of these cases involved the use of identical or similar offenses, and the offenses had minimal, probative value for impeachment purposes.

**F.**

This court is of the opinion the trial court did not abuse its discretion by ruling the State of Tennessee could use the defendant's prior felony murder conviction to impeach him if he had opted to testify in support of his defense. As previously noted, the offenses of felony murder and rape are dissimilar; and the conviction was probative of the defendant's credibility if he had taken the stand and claimed he did not rape the victim, or, in the alternative, if he had claimed the victim consented to the sexual penetration.

While the defendant did not testify or present any witnesses in support of his defense, he attempted to establish reasonable doubt by cross-examining the state's witnesses, attempting to discredit the scientific evidence, and arguing the weaknesses in the state's case to the jury during summation.

In short, if the defendant had testified he was not the perpetrator of the rape or, in the alternative, the victim consented to the sexual penetration, these two factual issues would hinge primarily upon the credibility of the victim and the defendant albeit there was scientific evidence and proof of other similar rapes to establish his guilt.

This issue is without merit.

**II.**

The defendant contends the trial court committed error of prejudicial dimensions by

9

permitting the State of Tennessee to introduce evidence he had raped two other women during its case-in-chief. He argues the rapes of these two women were too remote in time from this case, and the two rapes "were not sufficiently 'unique' in their commission so as to be admissible in the present case." The State of Tennessee contends the manner in which the defendant committed the two prior rapes was so unique that the evidence clearly points to him as the perpetrator.

The State of Tennessee gave the defendant notice that if he opted to testify in support of his defense, the state would use three prior bad acts, the rape of three other women, to impeach him pursuant to Rule 608(b)(3), Tennessee Rules of Evidence. During the course of the trial, the state advised defense counsel it was going to present two of the women as part of its case-in-chief. A jury-out hearing ensued. The trial court stated in ruling: "I do recall the facts. I'm going to let them testify."[1] The trial court did not state the legal basis for admitting this evidence. Furthermore, neither party requested the trial court to state the reasons why it was introducing the proof of other crimes.

## A.

The State of Tennessee presented two witnesses, Sarah Johnson and Angela Arnold. Johnson testified the defendant raped her on June 13, 1991. Arnold testified the defendant raped her on November 20, 1993. The defendant raped the victim in this case on October 11, 1993.

Johnson testified she was walking along Navy Road in Millington when the defendant stopped and offered her a ride. She had known the defendant for six years. The defendant turned onto Bethel Road and proceeded to Edmond Orgill Park. They stopped at the park and talked for a period of time. The defendant then drove toward Tipton County. He parked his vehicle in a desolate area on a back road. Both the defendant and Johnson exited the vehicle on their respective sides to urinate. The defendant then walked around the vehicle and told Johnson to remove her pants. She

---

[1]This same evidence was presented in the defendant's first degree murder trial. State v. Collier V. Harris, Shelby County No. 02-C-01-9603-CR-00095 (Tenn. Crim. App., Jackson, December 3, 1997).

thought he was kidding. When she attempted to walk away, the defendant placed his arm around her neck and squeezed until she lost consciousness. When she regained consciousness, she was on the ground near the rear of the defendant's vehicle. She next remembered being in the back seat of the defendant's vehicle. Her pants had been removed. The defendant vaginally penetrated her in the back seat. He then drove to a boat ramp at Richardson Landing in Tipton County, another desolate area, and the defendant raped the victim again inside the vehicle. When Johnson refused to have intercourse with the defendant, he told her, "You know how I can get it. Don't make me do it, be that way again." The defendant then drove the victim to her residence. She arrived home at 3:00 a.m. He threatened her if she revealed what had occurred.

Arnold had known the defendant for approximately six months. She had gone to a friend's apartment after having an argument with her husband. When plans to attend a nightclub in Memphis failed, the defendant asked Arnold to take him home. Subsequently, the defendant and Arnold discussed the well-being of a mutual friend. The mutual friend's girlfriend had been killed in a motor vehicle accident. The defendant told Arnold their friend was probably at the "tree" in Edmond Orgill Park. When they arrived at the "tree," no one was there. They sat on the hood of the vehicle and listened to music. The defendant attempted to kiss her. She resisted and attempted to get into the vehicle. The defendant shut the door so she could not enter the vehicle. The defendant then grabbed Arnold around the neck, applied a choke hold, and Arnold lost consciousness. When she regained consciousness, she was lying face down behind the vehicle. The defendant had pulled her pants down. When Arnold tried to lift herself from the ground, the defendant applied a choke hold a second time and Arnold again lost consciousness. When she regained consciousness, the defendant was vaginally penetrating her. The defendant told her "you're not any good." He made her pour vodka on the genital area of her body.

The defendant drove to a store and purchased a package of condoms. He then drove to another desolate location. He asked Arnold if she wanted to die. He placed a condom on his sexual organ and raped Arnold a second time. Once he had completed the act, he removed the condom and placed another condom on his sexual organ. He made Arnold get on top of him while he vaginally penetrated her a third time. Arnold testified she

tried to "just get it over with" so she could go home. The defendant drove Arnold's vehicle to his residence. Before exiting the vehicle, he threatened Arnold and told her not to call the police or reveal what had occurred to anyone.

There are numerous similarities incident to the above rapes and the rape of the victim in this case. First, Johnson and Arnold knew the defendant. The victim in this case did not know the defendant by name, but she knew who he was and the type of automobile he drove. He drove through the victim's neighborhood frequently. Second, all three rapes originated and/or occurred in a secluded area outside of Millington, Tennessee. Johnson's rape originated in Millington, but the actual rape occurred just across the Tipton County line just north of Millington. Third, all of the rapes occurred late in the evening or during the early morning hours. Fourth, the defendant always took the victim to a remote area where there were no dwellings or lights. Fifth, the defendant never attempted to conceal his identity. Sixth, the defendant used a choke hold to subdue all three victims. The hold caused two of the victims to lose consciousness. When one of the victims awakened, the defendant applied the choke hold a second time to subdue the victim. He threatened a second victim with the choke hold if she did not cooperate. The victim in this case testified she became dizzy and short of breath, but she did not lose consciousness. While the victim was unconscious, the defendant would remove the victim's clothing. Seventh, the defendant made efforts to avoid leaving semen. In two of the rapes, the defendant wore a condom. In the Arnold rape, the defendant made the victim wash the genital area of her body with vodka. Eighth, the defendant instructed the victims not to tell anyone about the rapes. If the victims revealed the rapes, he threatened to rape them again.

**B.**

The admissibility of evidence regarding the Johnson and Arnold rapes involves Tenn. R. Evid. 404(b). This rule states:

> **(b) Other Crimes, Wrongs, or Acts**. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before

12

allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

In Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980), the supreme court said proof of other crimes may be admitted to establish motive, identity, lack of mistake or accident, or the existence of a common scheme or plan if (a) relevant to one of these issues and (b) the probative value of the evidence outweighs the danger of unfair prejudice.

This court must now determine whether the admission of this evidence was relevant to establish one of the exceptions to Rule 404(b).

**(1)**

During the jury-out hearing pursuant to Rule 404(b), the state discussed all of the exceptions outlined in Bunch. The state did not indicate which of these exceptions it contended was relevant in this case. Much of the hearing was spent discussing the similarities between all three rapes and the uniqueness of the defendant's conduct during the rapes. It appears the state ultimately limited the relevance of the evidence to the exceptions of identity and the presence of a common scheme or plan. This court is of opinion that the evidence was also relevant on the issues of intent and identity.

Although the defendant did not testify or present witnesses in support of his defense, it was his contention the victim in this case consented to the sexual intercourse. He attempted to establish this through cross-examination. The defendant concedes that if the evidence of other rapes was properly admitted, it was only admissible to establish his identity.

The issue of identity was a major issue during the trial. The victim told the investigating officers the defendant's name was "Gary Marvin." She later discovered this

13

was not the defendant's name. Much was made of this discrepancy. He also attempted to discredit the DNA evidence presented by the state that linked him to the rape. During closing argument, defense counsel told the jury the DNA evidence should be "view[ed] with caution" in an effort to discredit this scientific evidence.

**(2)**

The appellate courts of this state have approved the use of other acts in a rape prosecution. In White v. State, 533 S.W.2d 735 (Tenn. Crim. App. 1975), cert. denied (Tenn. 1976), the trial court allowed evidence to establish that White had committed similar rapes within a two-month period. Id. at 743. The evidence was admitted to establish White's identity as well as a course of conduct. Among the similarities were: the defendant's use of a knife, forcing the victims into the backseat of a motor vehicle, forcing the victims to disrobe, discussion of illicit narcotics with the victims, and allowing the victims to use a tissue. White also rode in a motor vehicle with the victims, took their purses, and released the victims on a street. Id. at 738. This court noted the rapes were so "strikingly similar that there [could] be no other conclusion than the fact that the defendant committed all three rapes. . . ." Id. at 741.

In Bunch v. State, the supreme court approved the use of another armed robbery in a prosecution for armed robbery because this evidence was relevant to the issue of identity. 605 S.W.2d at 231. The court stated:

> [T]he modus operandi of the other crime and of the crime on trial must be substantially identical and must be so unique that proof that the defendant committed the other offense fairly tends to establish that he also committed the offense with which he is charged.

605 S.W.2d at 230 (emphasis in original). Among the similarities noted in Bunch: the robberies were accomplished by two men and one woman, the victims were placed in restrooms, the two victim businesses were in close proximity, and the robberies occurred on the same day separated by a few hours. The supreme court further noted:

> [I]t is not necessary that the other crime be identical in every

14

> detail to the offense on trial; it is sufficient if evidence of the other crime supports the inference that the perpetrator of it, shown to be the defendant, is the same person who committed the offense on trial.

605 S.W.2d at 231.

The same analysis used in determining a 404(b) issue has been used in analyzing whether severance of similar charges would be proper. State v. Peacock, 638 S.W.2d 837, 840 (Tenn. Crim. App.), per. app. denied (Tenn. 1982) (This court affirmed the denial of severing several armed robberies and rapes because the crimes were part of a common scheme or plan. Peacock committed several armed robberies at residences in close proximity to each other. In each instance, he knocked before entering, demanded money, drugs and jewelry, forced his victims to disrobe, used a pistol and threatened each victim, threatened the victims if they looked at his face, and threatened the victims if they called the police.); State v. Wooden, 658 S.W.2d 553, 557-58 (Tenn. Crim. App.), per. app. denied (Tenn. 1983) (This court affirmed the joinder of several sex crimes on the grounds the offenses were similar in modus operandi and occurred within a close proximity of the time and place. The similarities included: the victims were young white females who lived in an apartment complex and were alone at the time of the offense; the attacker was in the apartment when the victim arrived or would enter shortly thereafter; the attacker hid his face; the attacker performed cunnilingus before penile/vaginal rape; he required the victim to rub his nipples; and the offenses took place over nineteen months within apartment complexes in close proximity to each other.); see also State v. Edwards, 868 S.W.2d 682, 693-94 (Tenn. Crim. App.), per. app. denied (Tenn. 1993) (This court upheld the denial of severance of multiple rape charges based upon the reasoning of Wooden, Peacock, and Bunch. The victims were white females between the ages of 21 and 24. The attacks occurred within a two-mile radius at apartment complexes or duplexes. All the victims were alone and asleep. Each incident involved a burglary before the rape. He usually took money. All the victims lived on the ground floor. The attacker instructed all the victims to remain quiet; he rubbed each victim's breasts and digitally penetrated the victims. The crimes occurred over a twenty-month period.).

While the descriptions of the acts committed by the defendant were similar, and

though there are some differences in the testimony given by Johnson and Arnold, the similarities between the offenses far outweigh the minor differences. See State v. McKnight, 900 S.W.2d 36, 52 (Tenn. Crim. App. 1994), per. app. denied (Tenn. 1995).

This court must now address the weighing of the probative value versus the unfair prejudice in the admission of this evidence.

## (3)

Rule 404(b)(3) requires the trial court to weigh the probative value of the other crimes evidence against the danger of unfair prejudice. The record does not reflect why the trial court found the testimony given by Johnson and Arnold was probative and why it outweighed the danger of unfair prejudice to the defendant.

The factors to be considered when undertaking the weighing process mandated by Rule 404(b)(3) include the prosecution's need for the evidence, the likelihood the defendant committed the other crimes, and the degree of relevance to the issues. Edwards, 868 S.W.2d at 691. Since the defendant attempted to establish the sexual intercourse with the victim was consensual, and the defendant made an effort to discredit the DNA scientific evidence, the state needed this evidence to establish the victim did not consent to the sexual intercourse with the defendant. The evidence was also needed to establish the defendant was the person who raped the victim in this case.

This court concludes the probative value of the evidence admitted in this case far outweighed the danger of unfair prejudice to the defendant.

This issue is without merit.

## III.

The defendant contends the trial court committed prejudicial dimensions when instructing the jury regarding the proof of other crimes, i.e., the rape of the two women who testified as prosecution witnesses. He argues the instruction should have been limited to proving his identify, if the evidence was admissible. The record reflects the trial court

16

included the following categories in the instruction in addition to identity: the complete story of the crime, a scheme or plan, motive, intent, and guilty knowledge.

The defendant concedes trial counsel did not object to the instruction. In addition, trial counsel did not include this issue in the motion for a new trial. Since reversal on this issue would result in a new trial, the issue was required to be included in the motion for a new trial. Nevertheless, appellate counsel respectfully requests this court to consider this issue because it constitutes plain error on the face of the record. He cites this court's opinion in State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994) to support his argument. The State of Tennessee, citing federal cases, contends the failure to raise this issue does not constitute plain error on the face of record.

This court is of the opinion the defendant has waived this issue. First, the issue was not raised in the motion for a new trial. Tenn. R. App. P. 3(e); State v. Keel, 882 S.W.2d 410, 417 (Tenn. Crim. App.), per. app. denied (Tenn. 1994). Second, assuming arguendo this court is willing to consider this issue pursuant to Rule 13(b), Tennessee Rules of Appellate Procedure, or Rule 52(b), Tennessee Rules of Criminal Procedure, neither party has briefed this issue on the merits. Thus, the issue is waived pursuant to Rule 27(a)(7), Tennessee Rules of Appellate Procedure.

This court parenthetically notes a trial court should limit the scope of the instruction on proof of other crimes to the specific reason or reasons for its admission into evidence. The remaining reasons which would justify the admission of such evidence should be deleted from the pattern jury instruction. This was not done in this case. However, if this issue was considered on the merits, this court would hold the error was harmless. Tenn. R. App. P. 36(b).

This issue is without merit.

**IV.**

The defendant contends the trial court committed error of prejudicial dimensions by sentencing him as a multiple offender and imposing a Range II sentence. He argues he is a standard offender, and the sentence imposed should have been within Range I. The

State of Tennessee correctly confesses error. The state agrees the defendant is a standard offender, and the trial court should have imposed a Range I sentence.

The record reflects the defendant has been convicted of simple assault, two counts of simple possession of marijuana, and possession of a dangerous weapon, all misdemeanors. He was convicted of murder first degree. The offense occurred on November 29, 1992. He was convicted of the offense on September 25, 1995. He was sentenced to life imprisonment on November 15, 1995.

In the context of this case, the phrase "multiple offender" is defined in Tenn. Code Ann. § 40-35-106(a)(2)(1990) in the following manner:

> (a) A "multiple offender" is a defendant who has received:
>
> * * * *
>
> (2) One (1) Class A prior felony conviction if the defendant's conviction offense is a Class A or B felony.
>
> (b) In determining the number of prior convictions a defendant has received:
>
> (1) "Prior conviction" means a conviction for an offense occurring prior to the commission of the offense for which the defendant is being sentenced.

The Sentencing Commission Comments accompanying this statute shed light on the meaning of the phrase "prior felony conviction." The Commission Comments state:

> The prior felony convictions used to trigger the multiple offender status must have occurred prior to the commission of the offense for which the defendant is being sentenced. In this sense, the multiple offender classification is a recidivist provision designed to punish persons who have been previously convicted and then commit new crimes. . . .

In State v. Blouvett, 904 S.W.2d 111 (Tenn. 1995), the Tennessee Supreme Court addressed the precise issue raised by the defendant. Justice Birch, speaking for a unanimous court, stated: "[I]t is clear from the comments [accompanying the applicable statute] that 'prior conviction' means a conviction that has been adjudicated prior to the commission of the more recent offense for which sentence is to be imposed." 904 S.W.2d at 113. In other words, before a prior conviction can be used to enhance the sentencing

18

range, the offense must have been committed and the accused convicted of the offense prior to the commission of the offense for which the accused is being sentenced.

In this case, the first degree murder offense was committed prior to the rape of the victim in this case. However, the defendant was convicted of the murder first degree offense after the commission of the rape. The rape occurred on October 11, 1993. The defendant was not convicted of the murder first degree offense until September 25, 1995. Consequently, the murder first degree conviction could not be used to enhance the defendant's sentencing status from a Range I standard offender to a Range II multiple offender.

This cause is remanded to the trial court for a new sentencing hearing and the imposition of a Range I sentence. If either party is aggrieved by the sentence imposed by the trial court on remand, the aggrieved party may appeal as of right pursuant to Tenn. Code Ann. §§ 40-35-401 or -402.

_____
JOE B. JONES, PRESIDING JUDGE


CONCUR:


_____
DAVID H. WELLES, JUDGE


_____
JOE G. RILEY, JUDGE

19