# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 12, 2006

## STATE OF TENNESSEE v. ZACHARY V. HENNING

**Appeal from the Circuit Court for Lauderdale County**
No. 7720-B     Joseph H. Walker, III, Judge

---

**No. W2005-00269-CCA-R3-CD  - Filed February 23, 2007**

---

The defendant, Zachary V. Henning, was convicted at a jury trial in Lauderdale County Circuit Court of aggravated robbery, aggravated assault, and theft of property valued between $1,000 and $10.000. He was sentenced, as a Range I offender, to 10 years for aggravated robbery, three years for aggravated assault, and two years for theft of property.  The trial court merged the conviction of aggravated assault with the aggravated robbery conviction and imposed the theft sentence to run concurrently with that for aggravated robbery, for an effective sentence of 10 years.  On appeal, the defendant challenges the sufficiency of the convicting evidence and complains that his sentence is excessive.  Upon our review of the record and the parties' briefs, we conclude that the evidence is sufficient to support the jury's guilty verdicts but that multiple convictions for aggravated robbery and theft violate double jeopardy protections.  Accordingly, the defendant's conviction judgments for aggravated assault and theft are vacated, and the jury's "guilty verdict" for the theft is merged into the judgment of conviction of aggravated robbery.  The defendant's aggravated robbery sentence is affirmed, and we remand solely for the correction and entry of an appropriate judgment consistent with this opinion.

**Tenn. R. App. P. 3; Judgments of the Circuit Court are Vacated in Part;**
**Affirmed in Part.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Gary F. Antrican, District Public Defender; and Kari I. Weber and Julie K. Pillow, Assistant District Public Defenders, for the Appellant, Zachary V. Henning.

Robert E. Cooper, Jr., Attorney General & Reporter; Cameron L. Hyder, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer-Walker, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case arises from the December 4, 2004 robbery and assault of Lynnwood Shoemake, the owner of Lynnwood's Market located at 310 Eastland Avenue in Ripley. The proof at trial showed that Mr. Shoemake closed his store on the evening of December 4 at approximately 9:15 p.m. As he approached his truck, which was parked near the front door, two men walked around the corner of the store near a drink machine and approached him. One of the men pointed a gun at Mr. Shoemake and ordered him to go back inside the store. When Mr. Shoemake did not respond, the gunman struck him on the head causing Mr. Shoemake to fall to the ground. Mr. Shoemake's reading glasses fell off, and he testified, "Blood was shooting out of my head, all over the sidewalk." Afraid for his life, Mr. Shoemake then unlocked the store door, and the three men went inside where the gunman ordered Mr. Shoemake to open the market's safe. The entry activated the store's alarm system making the gunman "real nervous" and "just panicking almost." Mr. Shoemake opened the safe, and the men grabbed two bags containing approximately $4,700 and fled.

At trial, Mr. Shoemake described his assailant as a young, slender black male. Even though the assailant "had his face covered with some kind of a mask," Mr. Shoemake testified that the assailant's eyes were quite distinctive. Mr. Shoemake said he had a clear view of the eyes when the assailant first approached him and "got right in [Mr. Shoemake's] face." Mr. Shoemake provided a courtroom identification of the defendant as the individual who assaulted him with the gun.

Bobby Gause, the man who accompanied the defendant that evening and who had been indicted as a co-defendant testified for the State. Gause said that he met the defendant that evening near Lynnwood's Market. The defendant was wearing an "old coat and a bandanna," and Gause was dressed in a "red and black hoodie." Gause testified that he and the defendant intentionally waited until the store was closed, and when Mr. Shoemake walked toward his truck, the defendant "ran up to Mr. [Shoemake] before [Gause] did, and when [Gause] started walking towards [Mr. Shoemake], [the defendant] struck Mr. [Shoemake] in the head." Gause explained that the defendant struck Mr. Shoemake with a gray pistol, and Gause denied knowing that the defendant intended to assault Mr. Shoemake.

Mr. Shoemake unlocked the market's door, and Gause testified that he and the defendant followed Mr. Shoemake inside the market. Mr. Shoemake opened the safe, as ordered, and Gause said he and the defendant grabbed the money bags, later "split the money," and "threw the checks [inside the money bags] in the garbage."

Gause admitted that he had pleaded guilty to aggravated robbery, aggravated assault, and theft of property over $1,000. He denied "receiv[ing] any deals from the State" in exchange for his testimony against the defendant. Gause also admitted that he had prior convictions for theft and possession of a firearm. Lieutenant Sanders interviewed Gause three times following his arrest. Gause admitted that he lied to Lieutenant Sanders during the first two interviews; during those interviews Gause denied involvement in the robbery and provided the names of other individuals.

The third time, Gause told the officer the truth because he "just wanted to go on and get it over with."

During his trial testimony, Gause mentioned that another individual, Tony Currie, had been present when he and the defendant initially discussed robbing Lynnwood's Market. The State called Currie as a witness, and he confirmed that he was present when Gause and the defendant discussed robbing the market. He also testified that he was in the area on December 4 when Mr. Shoemake was assaulted and robbed. Currie saw the defendant strike Mr. Shoemake and saw the three men enter the market. Currie explained that he was reluctant to speak with law enforcement officers because he "wasn't trying to get [the defendant and Gause] in trouble." Currie denied having a gun that evening or going into Lynnwood's Market. He also denied receiving any of the robbery proceeds.

Nicholas Harding, who was acquainted with the defendant, Currie, and Gause, testified that he also witnessed the robbery on December 4. He saw Mr. Shoemake fall to the ground and saw the defendant and Gause accompany Mr. Shoemake inside the market. Harding and Currie are cousins, and Harding agreed that he would not want to cause his cousin any trouble. Harding denied involvement in the robbery or receipt of any proceeds.

The defendant did not testify at trial or offer any evidence.

## SUFFICIENCY OF THE EVIDENCE

The defendant's evidence-sufficiency argument attacks the State's proof of his identity as the person who entered Lynnwood's Market with a gun, demanded that Mr. Shoemake open the safe, and received money from the market's safe. Specifically, he characterizes Mr. Shoemake's identification as "problematic" because the events occurred at night, the inside of the store was only partially lit, Mr. Shoemake admitted seeing only the assailant's eyes, and because Mr. Shoemake admitted that the first time he identified the defendant was during the preliminary hearing in general sessions court. The defendant also assails Gause's credibility based on the inconsistent statements given to Lieutenant Sanders, and the defendant questions Currie's credibility because Currie denied receiving any robbery proceeds although Gause contradicted that claim.

A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a guilty verdict destroys the presumption of innocence and replaces it with a presumption of guilt. *See State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003); *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court must reject a defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *See Carruthers*, 35 S.W.3d at 558; *Hall*, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this court will not re-weigh or re-evaluate the evidence. *See Evans*, 108 S.W.3d at 236; *Bland*, 958 S.W.2d at 659. Nor will this court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. *See Evans*, 108 S.W.3d at 236-37; *Carruthers*, 35 S.W.3d at 557.

The defendant invites this court to reassess the trial evidence and substitute our own inferences and credibility determinations for those of the jury. We reject the invitation, as we must, pursuant to our circumscribed standard of appellate review. A jury verdict approved by the trial court accredits the State's witnesses and resolves *all conflicts in the evidence* in the State's favor. *See Bland*, 958 S.W.2d at 659. The question of identity is not one to be decided by the court. Such a question is within the sole province of the jury. The identification of the defendant as the person who committed the crime for which he is on trial is a question of fact for the determination of the jury, upon consideration of all the competent proof. *See Stubbs v. State*, 216 Tenn. 567, 393 S.W.2d 150 (1965); *White v. State*, 533 S.W.2d 735, 744 (Tenn. Crim. App. 1975).

Relevant to this case, a person commits aggravated robbery who commits a robbery with a deadly weapon. T.C.A. § 39-13-402(a)(1) (2003). Robbery "is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id*. § 39-13-401(a). The indictment alleged that the defendant committed aggravated assault by intentionally or knowingly committing an assault via "bodily injury," *id*. § 39-13-101(a)(1), and using or displaying a deadly weapon, *id*. § 39-13-102(a)(1). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id. § 39-14-103*.

The State presented abundant evidence from which the jury reasonably could conclude that the defendant was the perpetrator who committed the charged offenses. Mr. Shoemake identified the defendant as the individual who pointed a gun at him, struck him in the head, and ordered him to open the safe. Mr. Shoemake testified that the money bags taken from the safe contained approximately $4,700. The co-defendant Gause testified about his involvement, and he related that he personally saw the defendant strike Mr. Shoemake in the head with the gun. Both Currie and Harding testified that they were in the area and witnessed the defendant assault Mr. Shoemake with a gun and the three men enter the market.

This evidence, we hold, is legally sufficient to find the defendant guilty beyond a reasonable doubt of aggravated robbery, aggravated assault, and theft of property valued between $1,000 and $10,000.

**PLAIN ERROR**

As a matter of plain error, *see* Tenn. R. Crim. P. 52(b); *State v. Lewis*, 958 S.W.2d 736, 738 (Tenn. 1997), we hold that principles of double jeopardy bar the defendant's multiple convictions of aggravated robbery and theft, *see State v. Hayes*, 7 S.W.3d 52, 56 (Tenn. Crim. App. 1999) (stating that theft is an element of aggravated robbery and, therefore, a lesser included offense of aggravated robbery, with the result that an accused may not be convicted of both theft and aggravated robbery when the same facts establish the offenses). The finding of guilty on the theft count should be merged into the judgment of conviction of aggravated robbery. *State v. Addison*, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997) ("Such a merger and imposition of a single judgment of conviction protects against double jeopardy and preserves the validity of the jury verdicts for future avoidance of problems related to unnecessarily dismissed 'charges' or 'convictions'").[1]

Further, we note that the trial court endeavored to merge the finding of guilt of aggravated assault into the aggravated robbery conviction; however, it entered a judgment of conviction of aggravated assault, including the imposition of a sentence for that offense. To effect merger, the proper procedure is to merge the finding of guilt of aggravated assault into the judgment of conviction of aggravated robbery. *See State v. Timmy Reagan*, No. M2002-01472-CCA-R3-CD, slip op. at 20 (Tenn. Crim. App., Nashville, May 19, 2004) ("[N]either two sentences nor separate judgments of conviction should [be] entered, and the one judgment of conviction should reflect the merger."). On remand, the trial court should vacate the judgments of conviction of aggravated assault, including the sentence, and of theft and amend the judgment of conviction of aggravated robbery to reflect the merger of both the findings of guilt of aggravated assault and theft.

**SENTENCING**

The defendant is aggrieved of his 10-year mid-range sentence for his aggravated robbery conviction. *See* T.C.A. §§ 39-13-402(b) (2003) (aggravated robbery is Class B felony), 40-35-112(a)(2) (2006) (Range I sentence for Class B felony is eight to 12 years) He also complains that the trial court erred in not granting probation or a community-corrections sentence.

Turning to the defendant's 10-year sentence for aggravated robbery, we begin with our familiar standard of review. When there is a challenge to the length, range, or manner of service

---

[1]We acknowledge that the trial court stated its intent to merge the finding of guilt of aggravated assault into the conviction of aggravated robbery, and we assume that the court determined that principles of double jeopardy bar the imposition of both these convictions. We are not convinced that the configuration of the two counts in the indictment impel a merger. The charge of aggravated robbery is based upon the deadly-weapon mode. *See* T.C.A. § 39-13-402(a)(1) (2003). To be sure, the mode of aggravated assault charged in the indictment is the use or display of a deadly weapon. *Id*. § 39-13-102(a)(1)(B). Although both modes employ the deadly-weapon basis for aggravation, the indictment charges that the underlying assault in the aggravated assault count was committed via bodily injury. *Id*. § 39-13-101(a)(1). Neither robbery nor the mode of aggravated robbery as alleged in the indictment contains a bodily injury element. Nevertheless, we will leave the merger of the finding of guilt of aggravated assault undisturbed, subject to remand for procedural correction elsewhere explained in this opinion. The State neither appealed nor raised the issue.

of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000). "The burden of showing that the sentence is improper is upon the appellant." *Ashby*, 823 S.W.2d at 169. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. *Id*. If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In ordering an incarcerative sentence and denying probation or alternative sentencing, the trial court made the following remarks:

> I've reviewed the presentence report.
>
> Find under the principles of sentencing the defendant should be sentenced as a standard offender.
>
> The defendant has a history of criminal behavior in addition to what's necessary to establish the appropriate range.
>
> The Court finds there are not statutory mitigating factors.
>
> The proof showed that this defendant used a weapon to beat the victim, forced the victim to his knees. The victim received an injury that could have been life-threatening. He was bleeding profusely. Forced the victim inside the business to open the safe, and then took money, together with his codefendant, from the premises.
>
> The Court finds that the defendant should be sentenced to an enhanced sentence of ten years as a standard offender in Count 1; three years in Count 2, that merges I believe into the first count – the defendant participated in the taking of the property – and sentences the defendant to two years in Count 3; all counts to run concurrent.
>
> Restitution in the amount of $4,700 is fixed.
>
> The Court finds it's not a proper case for probation or alternative sentencing and denies the request.

These meager remarks are inadequate to apply de novo review with a presumption of correctness. Therefore, our review of the defendant's sentence will be purely de novo.

Upon canvassing the record, we find that the presentence report reflects that the defendant was adjudicated guilty as a juvenile in December 2000 of unlawful possession of a weapon (BB gun) and a curfew violation and in 2002 of disorderly conduct. *See State v. Adams*, 45 S.W.3d 46, 59 (Tenn. Crim. App. 2000) (trial court entitled to rely upon evidence of the juvenile offenses contained in presentence report). In June 2003, the defendant was convicted as an adult of simple assault. The defendant reported to the presentence investigator that he had been drinking alcohol since he was fifteen years old, that he used marijuana "every chance" he could, and that he used crack cocaine every time he smoked or drank. The defendant said that during 2004, he smoked marijuana sprinkled with crack cocaine on a daily basis. We are satisfied from this evidence that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, making enhancement factor (1) and/or factor (16) applicable. *See* T.C.A. § 40-35-114(1), (16) (2006).[2]

We also find that the trial testimony of co-defendant Gause establishes that the defendant "was a leader in the commission of an offense involving two (2) or more criminal actors," for which enhancement factor (2) is applicable. *See id*. § 40-35-114(2). Application of these two enhancement factors, with no applicable mitigating factors, leads us to conclude that a mid-range sentence of 10 years is fully warranted.

Regarding the manner of service of the sentence, the defendant's 10-year sentence renders him ineligible for probation. *See* T.C.A. § 40-35-303(a) (2003).[3] Furthermore, as a standard offender convicted of a Class B felony, the defendant was not entitled to the presumption of favorable candidacy for alternative sentencing in the absence of evidence to the contrary. *See id*. § 40-35-102(6) (presumption extended to an offender who is "an especially mitigated or standard offender convicted of a Class C, D or E felony").

The last sentencing consideration is whether the trial court should have imposed a community corrections sentence. Here again, the defendant fails to meet the standard eligibility requirements for consideration of a community corrections sentence. He was found guilty of aggravated robbery and aggravated assault, violent felony offenses and offenses involving a crime

---

[2] Tennessee Code Annotated section 40-35-114, as amended in 2002 by Public Act 849, § 2(c), effective July 4, 2002, added one enhancement factor and subsequently renumbered all of the original enhancement factors in the statute. We note that the legislature has, again, recently amended and renumbered the enhancement factors, *see* T.C.A. § 40-35-114 (2006). Our references in this opinion to the enhancement factors derive from the current numbering scheme.

[3] For offenses committed on or after June 7, 2005, eligibility for probation has been increased from an eight-year sentence to a 10-year sentence. *See* T.C.A. § 40-35-303(a) (2006). The offenses in this case were committed on December 4, 2004.

against a person. *See* T.C.A. § 40-36-106(a)(1)(B), (C) (2006) (defining eligible offenders and excluding persons convicted of felony offenses involving crimes against the person and persons convicted of violent felony offenses). Furthermore, he merely argues in a conclusory fashion that he otherwise qualifies for the "special needs" category of offenders suitable for community corrections placement. *See id.* § 40-36-10(c). This argument is insufficient to demonstrate that the sentence imposed by the trial court was improper.

Now having fully reviewed and considered the issues raised on appeal, we affirm the aggravated robbery conviction and sentence, vacate the conviction judgments for aggravated assault and theft, and remand for the correction and entry of an appropriate judgment for aggravated robbery reflecting the merger of offenses into a single judgment consistent with this opinion.

_____
JAMES CURWOOD WITT, JR., JUDGE