# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 1, 2008

## STATE OF TENNESSEE v. MARIO WARD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-08628     Carolyn Wade Blackett, Judge**

---

**No. W2007-00672-CCA-R3-CD  - Filed October 27, 2008**

---

The defendant, Mario Ward, was convicted by a Shelby County jury of criminal attempt to commit voluntary manslaughter, a Class D felony, and aggravated assault, a Class C felony, and was subsequently sentenced to concurrent six-year sentences as a Range II offender.  On appeal, the defendant raises the single issue of whether the evidence is sufficient to support the convictions.  Following review of the record, we affirm the judgments of conviction as entered.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Mark Mesler, Memphis, Tennessee (on appeal), and Edward Bronsten and Paul Springer, Memphis, Tennessee (at trial), for the appellant, Mario Ward.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Hagerman and Dean Decandia, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The two victims in the case, Fredrick Pinkins ("victim one"), and Deaungelos Artis ("victim two"), were shooting dice with the defendant and several other people on the night of the incident, and victim one won a substantial amount of money in the game.  The victims and the defendant had known each other for more than a year, often played dice, and had no previous problems with each other.  After the game, the two victims left in victim two's Chevy Tahoe and proceeded to a parking lot at Third Street and Broadway, which was located between a nightclub and a "crap house."  Victim one, who was driving, remained in the car to count his winnings, while victim two got out of the car and went toward the rear of the club to use the bathroom.  The defendant, who had arrived

in a small green car, approached victim two and demanded to know the location of victim one. Victim two observed that a passenger, whom he did not recognize, remained in the defendant's car. The defendant, holding a pistol and speaking in a loud tone of voice, informed victim two that he wanted his money back from victim one.

Victim one, who was talking on the cell phone in the vehicle, heard the defendant asking where he was. Both victim one and victim two observed the defendant fumbling with the gun, as if it had jammed, and then returning to his car. Afterwards, victim two observed the defendant walk toward the driver's side of the Tahoe, but he lost sight of the defendant at that point. However, victim two heard the defendant yelling at victim one to give him his money and then heard two gunshots. Victim two approached the driver's side of the vehicle and saw that the defendant was standing beside the vehicle with a gun, that victim one had been shot in the face, and that there was a bullet hole in the windshield. At this point, victim two ran toward the back of the "crap house," and, as he was running, two shots were fired at him. The shots were fired from the area in which he had last seen the defendant. Victim two hid behind the building for a short time before proceeding back to his vehicle and calling 9-1-1. When he returned to the vehicle, he noticed that the defendant's car was still in the parking lot but neither the defendant nor the passenger was present. Victim two later saw the defendant return to his car and drive away. Both victims identified the defendant, in photographic lineups, as the shooter.

Police arrived and secured the crime scene. After victim one was removed by ambulance, Officer Keith Crosby interviewed victim two, who informed him what had occurred. Officer Crosby observed other people gathering at the scene but did not interview them based on victim two's statement. Crime scene investigators also responded to the scene. Four 9mm shell casings were found in the parking lot. Two of the shell casings were located between the Tahoe and a parked car, and the remaining two casings were found on opposite ends of the parking lot. However, based on where the shell casings were found, the crime scene officer stated that he could not say where the shooter had been standing when the shots were fired.

After a warrant was issued for his arrest, the defendant called the police station and made arrangements to turn himself in. He missed the first scheduled time but did come into the station four days later. While there, he was *Mirandized* and gave an oral statement in which he admitted being present at the crime scene. According to the statement, the defendant, the victims, and two individuals known as Big Lee and Red had been gambling that night. After the victims left, the others realized that the dice used in the game had been switched, which angered them because they felt they had been hustled. The defendant said that he proceeded to the parking lot where the two victims were known to hang out and first spoke with victim two. The defendant stated that Big Lee was already there and was speaking with victim two. The defendant asked for $100 of his money back, but victim two was not cooperative. He then approached victim one, who ignored him. The defendant contended that, while he was standing beside the driver's side of the Tahoe, he heard four shots fired from behind him. The defendant proceeded to flee the scene on foot only to return later to get his car.

Following his indictment for one count of attempted first degree murder and one count of aggravated assault, the defendant was tried before a Shelby County jury. Despite their prior identification of the defendant as the shooter, both victims testified at trial that they did not actually see the defendant fire the weapon. Nonetheless, both were clear in their testimony that the defendant was the only person they observed in the parking lot that night with a gun who was asking for victim one. In fact, victim two testified that, despite the presence of cars in the parking lot, he did not see anyone else outside until after the shots were fired. Testimony was also given by victim one regarding an incident several months after the shooting in which he had been approached in the barbershop by someone who claimed to have been present on the night of the shooting and told that the defendant was not the one who shot him. After hearing this, victim one went to the office of the defendant's attorney and informed him that, despite his previous identification, he did not actually see the defendant shoot him.

Following the presentation of proof, the defendant was convicted of the lesser included offense of attempted voluntary manslaughter and the indicted offense of aggravated assault. The trial court subsequently sentenced him to concurrent six-year sentences, as a Range II offender, to be served in the Shelby County workhouse. The defendant filed a timely motion for new trial, which the trial court denied. This appeal followed.

**Analysis**

On appeal, the defendant raises the single issue of sufficiency of the evidence. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

The defendant was convicted of attempted voluntary manslaughter and aggravated assault, and, on appeal, he challenges the sufficiency of the evidence supporting both convictions. He specifically contends that, even taken in the light most favorable to the State, the victims' testimony was insufficient to support the convictions because both acknowledged that they did not see the defendant actually fire the gun and that they did see a second person in the defendant's car. He also relies upon their testimony that they had known the defendant for more than a year, had previously shot dice with him, and were not afraid when they saw him approach with a gun. He further contends that the physical evidence found at the scene did not support the victims' testimony based upon the location of the shell casings and the fact that a parked car had a gunshot in the back window. He also points to the fact that police failed to interview any of the other witnesses at the scene and failed to search for Big Lee, whom the defendant, in his statement, contends was there at the time of the shooting. From his argument, we glean that the defendant is arguing that the evidence is insufficient to establish, beyond a reasonable doubt, his identity as the perpetrator of the crimes.

The identity of the perpetrator is required to be established, as identity is an indispensable element of the crime. *See White v. State*, 533 S.W.2d 735, 744 (Tenn. Crim. App. 1975). The identity of an accused may be established by either direct evidence, circumstantial evidence, or a combination of the two. *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley,* 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). Identity is a question of fact for the jury to determine after consideration of all the evidence. *State v. Strickland,* 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).

In addition to his general argument that the testimony of the witnesses and the placement of the evidence at the scene fails to support the conviction for attempted voluntary manslaughter, the defendant also contends that there was no evidence presented by any State witness with regard to "provocation . . . to create a state of passion" which "would cause a reasonable person to do irrational things." The defendant contends that, according to the testimony of the State's witnesses, he arrived on the scene in search of victim one and then shot him without any conversation.

Voluntary manslaughter is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a) (2006). One acts intentionally "when it is the person's

conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a) (2006). A person acts knowingly with respect to the results of his or her conduct "when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b). A person commits criminal attempt when he or she, "acting with the kind of culpability otherwise required for the offense," engages in one of the following activities:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believed them to be;

(2) Acts with intent to cause a result that is an element of the offense if the circumstances surrounding the conduct were as the person believed them to be; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a) (2006). While the defendant was indicted for attempted first degree murder, the law is settled that attempted voluntary manslaughter is a lesser included offense of attempted first degree murder under part (b) of the *Burns* test. *State v. Dominy*, 6 S.W.3d 472, 477 (Tenn. 1999); *State v. William Binkley*, No. M2001-00404-CCA-R3- CD (Tenn. Crim. App., at Nashville, Apr. 5, 2002); *State v. Jake Christopher Reynolds*, No. M2000-00210-CCA-R3-CD (Tenn. Crim. App., at Nashville, May 23, 2001).

A person commits aggravated assault who intentionally or knowingly commits an assault as defined in Tennessee Code Annotated section 39-13-101 and, as relevant here, uses or displays a deadly weapon. T.C.A. § 39-13-102(a) (2006). Pursuant to section 39-13-101, an assault, as committed in this case, occurs if a person intentionally or knowingly causes another to fear imminent bodily injury. T.C.A. § 39-13-101(a)(2) (2006).

Initially, we address the defendant's contention that the evidence fails to establish that, when the crimes occurred, he was acting in a "state of passion" produced by "adequate provocation." We disagree with his statement that no evidence was presented to establish this element. Through questioning by the defendant's counsel, as well as the defendant's own statement which was introduced through an investigator, there was evidence presented that the defendant was under the impression that the victims had cheated him out of money while shooting dice. The defendant's statement indicates that upon ascertaining this fact, he immediately left the area and proceeded to the location he believed the victims would be. The defendant was armed with a weapon and demanded to know where victim one was so that he could reclaim his money. Both victims testified that the defendant appeared angry and that he was cursing and speaking in a loud tone of voice. That both victims denied cheating is irrelevant, as it was the defendant's belief which is material to

-5-

establishing this element. The evidence presented was more than sufficient to allow a rational jury to conclude that the defendant was acting in a "state of passion."

The defendant does not dispute that the crimes of attempted voluntary manslaughter and aggravated assault were committed against the victims on the night in question. Victim one suffered a serious wound after being shot in the face, and victim two was shot at twice while running from the scene in fear. As noted, the defendant simply appears to argue that his identity as the perpetrator of the crimes was not established. We disagree. While the evidence supporting his convictions with regard to identity is circumstantial as no witness saw him actually fire the gun, the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the [d]efendant and the [d]efendant alone." *See Black*, 815 S.W.2d at 175.

Both of the victims testified that they saw the defendant in the parking lot immediately prior to the shooting and that he demanded to know victim one's location was so he could get his money back. Each victim testified that the defendant was angry and that he was in possession of a gun. Victim two saw the defendant walk to the driver's side of the vehicle, where he subsequently heard two shots fired. When victim two walked to that side of the vehicle, he saw the defendant standing with the gun in his hand. After seeing that victim one had been shot, victim two fled and was subsequently shot at twice. Those shots were fired from the direction in which victim two last saw the defendant standing. Both victims specifically testified that they saw no one else in the parking lot with a gun that evening. Moreover, the defendant, although denying committing the shootings, did admit to being at the scene, specifically by the driver's side of the Tahoe where the shots were fired. This evidence is more than sufficient to support an inference that the defendant was responsible for the shootings.

The defendant's contentions with regard to the placement of the physical evidence, the failure of police to interview other potential witnesses, the presence of the passenger in the defendant's car, and the fact that neither victim was scared of the defendant were all issues placed before the jury, whose province it is to determine the weight to be given to all evidence. The jury heard the testimony presented, including that neither victim specifically saw the defendant fire the weapon, and weighed the credibility of the testimony. Obviously, from their verdict, the jury found that the defendant's statement that he had not committed the shootings was not credible. It is not the province of this court to reweigh or reevaluate the evidence presented. *Cabbage*, 571 S.W.2d at 835. Our review of the record reveals that the evidence presented was sufficient to allow a rational juror to conclude that the defendant was guilty of the crimes beyond a reasonable doubt.

## CONCLUSION

Based upon the foregoing, the judgments of conviction are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE