FILED

04/24/2017

Clerk of the
Appellate Courts



## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 21, 2017, at Knoxville

## STATE OF TENNESSEE v. GREGORY MAURICE MARLIN

**Appeal from the Circuit Court for Bedford County**
**No. 18166      Franklin L. Russell, Judge**

_____

## No. M2016-01376-CCA-R3-CD

_____

The Defendant, Gregory Maurice Marlin, was convicted of evading arrest while operating a motor vehicle, evading arrest on foot, and operating a motor vehicle while declared a habitual traffic offender. The trial court sentenced the Defendant as a standard offender to two years for the evading arrest while operating a motor vehicle conviction, eleven months and twenty-nine days for the evading arrest on foot conviction, and two years for the operating a motor vehicle while declared a habitual offender conviction, all to be served consecutively to each other. After the sentencing hearing, the trial court amended the sentence and merged the evading arrest on foot conviction with the evading arrest while operating a motor vehicle conviction, for an effective sentence of four years in prison. The Defendant argues that the evidence is insufficient to support his convictions and that the trial court abused its discretion in sentencing him. After a thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Donna Orr Hargrove, District Public Defender; and Michael Collins (at trial and on appeal) and Brian Belden (at trial), Assistant District Public Defenders, for the appellant, Gregory Maurice Marlin.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant was indicted for one count of evading arrest while operating a motor vehicle, one count of evading arrest on foot, and one count of operating a motor vehicle while declared a habitual traffic offender. The evidence presented at trial established the following underlying facts.

Deputy Garcia Jordan with the Bedford County Sheriff's Department testified that he had known the Defendant for "several years" and could "easily recognize [the Defendant] by sight," and he made an in-court identification of the Defendant. On March 24, 2013, Deputy Jordan was at the Bedford County Workhouse having maintenance done on his marked patrol vehicle. The back of the workhouse where he brought his vehicle, abutted West Jackson Street. He testified that after the maintenance was completed, he pulled his vehicle out of the parking lot of the workhouse and attempted to pull out onto West Jackson Street. Before he could do so, he saw two vehicles traveling on West Jackson Street headed away from South Cannon Boulevard toward Tyson. He stated that the first vehicle he saw was a black Nissan Altima and the second vehicle, which passed by shortly thereafter, was a gold Chevrolet Caprice, traveling in the same direction as the Nissan Altima. He testified that the Caprice caught his attention because it was "obviously exceeding the 30-mile-an-hour speed limit."

Deputy Jordan decided to pull over the Caprice and activated his patrol lights and siren. He stated that as he pursued the Caprice, the driver of the Caprice accelerated, attempting to get away. He also stated that while in pursuit of the Caprice, he was travelling at about seventy to seventy-five miles per hour. Deputy Jordan testified that the driver of the Caprice made a right turn onto Pencil Street, travelled along Pencil Street until the intersection of West Lane Street, continued through a stop sign without stopping, and made a left turn onto West Lane Street. He explained that West Lane Street has a speed limit of thirty miles per hour. He stated that the driver of the Caprice then made a right turn onto Buckingham Lane, making no attempt to stop for Deputy Jordan. He also stated that the Caprice crested a hill along Buckingham Lane, and he briefly lost sight of the vehicle.

Deputy Jordan testified that after losing sight of the Caprice for a moment, he regained a visual of the vehicle which was attempting a left turn onto the driveway of a house on Buckingham Lane. The house with the driveway that the Defendant attempted to turn into was later determined to belong to the Defendant's cousin, Mr. Austin Smith. He also testified that the driver of the Caprice failed to successfully turn onto the driveway and instead skidded across the front yard of Mr. Smith's residence, leaving

tracks in the yard from the road to the neighboring house's yard. Deputy Jordan explained that the yard was wet because it had rained earlier in the day. He also explained that the Caprice came to a stop in the front yard of neighboring house and made a 180-degree turn while skidding across the front yard, causing the driver's side of the Caprice to face him at a distance of about fifteen to twenty yards. He testified that at the time of the pursuit of the Caprice, it was daylight, it was not raining, and visibility was fine. He also testified that after the Caprice came to a stop, he saw the driver's door open and the Defendant step out and look directly at him. Deputy Jordan stated that the Defendant closed the car door and quickly walked behind the neighboring house. He explained that he ran after the Defendant but that after reaching the back of the house, he did not see the Defendant. Deputy Jordan testified that there were many garages, toolsheds, trees, and shrubs behind the residence and that the Defendant could have found many places to hide. He also testified that once other police officers responded to the scene, they began to search the area for the Defendant but were unable to find him.

Deputy Jordan testified that the black Nissan Altima he saw before pursuing the Caprice was in the driveway of Mr. Smith's residence when the search for the Defendant began. He also testified that the license plate tag of the Caprice was registered to Mr. Austin Smith who lived at the house on Buckingham Lane. Deputy Jordan stated that he was certain that the driver of the Caprice was not, in fact, Mr. Smith. He also stated that he checked the Defendant's driving history and discovered that he was a habitual motor vehicle offender.

On cross-examination, Deputy Jordan testified that during his pursuit of the Defendant, the black Nissan Altima followed the Caprice. Deputy Jordan was unable to identify the driver of the Caprice while it was moving. He admitted that at the preliminary hearing in General Sessions Court, he testified that the Defendant was fifty yards away from him when the Defendant exited the Caprice, maintaining that he nonetheless immediately knew the driver of the Caprice to be the Defendant. Defense counsel presented Deputy Jordan with a report that Deputy Jordan then read from, stating, in part, "After further investigation, I identified the driver as" the Defendant. Deputy Jordan explained that he knew the Defendant's identity immediately and that while writing his report, he does an investigation to verify what he saw. He conceded that he could not remember what the Defendant was wearing when he exited the vehicle. He acknowledged that his report listed 6:30 P.M. as the time of the incident. On re-direct examination, he explained that there was "plenty of daylight" to observe the events that took place.

Mr. Austin Smith testified that on March 24, 2013, he was living on Buckingham Lane and owned a gold Chevrolet Caprice. He explained that he left the Caprice in the driveway of his house that morning because his producer picked him up and brought him

to work that day. He stated that after the Defendant escaped on foot following the vehicle pursuit, Mr. Smith's father called and told him to come home. Mr. Smith testified that upon returning home, he did not see his Caprice in the driveway but rather saw it in his neighbor's yard. He explained that the Caprice was not where he had left it that morning and that he did not give anyone permission to use his car that day. He also stated that the Defendant is his cousin and made an in-court identification of the Defendant. Mr. Smith testified that the ignition of his Caprice was malfunctioning and that a key was not necessary to drive the vehicle.

On cross-examination, Mr. Smith testified that there was no physical damage to the Caprice. He conceded that "based off [the] ignition system, anybody could have come and gotten the car, because it was never locked." He stated that on March 24, 2013, he did not allow the Defendant to borrow his car and did not see the Defendant.

The Defendant stipulated to being a habitual motor vehicle offender. The jury found the Defendant guilty of evading arrest in a motor vehicle, evading arrest on foot, and operating a motor vehicle while declared a habitual traffic offender.

At the sentencing hearing, the trial court found several enhancing factors that applied to the Defendant. Defense counsel urged the trial court to run the sentences concurrently because the Defendant had not been previously convicted of a felony. Defense counsel also argued that the evading arrest on foot conviction should be merged with the evading arrest in a motor vehicle conviction. The trial court found that enhancement factor number one applied, noting that the Defendant had many prior convictions, including evading arrest, resisting arrest, jail escape, and assault. T.C.A. § 40-35-114(1) (2015). The trial court also found that enhancement factor number eight applied, noting that the Defendant, whose record contained four revocations of probation, failed to abide by the terms of prior releases into the public. *Id.* § 40-35-114(8). The trial court also found that enhancement factor number thirteen applied because the Defendant was out on bond and on probation at the time of the instant offenses. *Id.* § 40-35-114(13). Based on the aforementioned findings and determining that the Defendant was a Range I offender, the trial court imposed the maximum sentence for each conviction: two years for evading arrest in a motor vehicle, eleven months and twenty-nine days at seventy-five percent for evading arrest on foot, and two years for operating a motor vehicle while declared a habitual offender. *Id.* §§ 40-35-111(e)(1), -112(a)(5). The trial court did not find that any mitigating factors applied, and that none were suggested to the court.

The trial court ordered the Defendant to serve his sentences consecutively, finding that the Defendant's criminal record was extensive and that the Defendant was on probation when he committed the instant offenses. *Id.* § 40-35-115(b)(2), (b)(6). The

- 4 -

trial court also refused to merge the evading arrest convictions, noting that the offenses occurred during separate and distinct time periods. Finally, the trial court denied alternative sentencing for the Defendant, concluding that his criminal record was too extensive and that his record for abiding by the terms of previous alternative sentencing was "abysmal." The trial court later amended the Defendant's sentence, merging the evading arrest on foot conviction with the evading arrest with a motor vehicle conviction. The Defendant received an effective four-year sentence of incarceration.

## ANALYSIS

On appeal, the Defendant challenges the sufficiency of the evidence to sustain his convictions. The crux of the Defendant's argument lies in the proof concerning the identity of the driver of the gold Chevrolet Caprice. The Defendant challenges whether Deputy Jordan was capable of making a positive identification of the driver of the Caprice. The Defendant also argues that the trial court abused its discretion by giving the Defendant the maximum available sentence for his convictions.

### I.     Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). The appellate court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). Instead, this court affords the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences that may be drawn from that evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). The conviction replaces the presumption of innocence with a presumption of guilt, and the accused has the burden of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The identity of the perpetrator is an indispensable element of the crime. *See White v. State*, 533 S.W.2d 735, 744 (Tenn. Crim. App. 1975). The identity of an accused may be established by either direct evidence, circumstantial evidence, or a combination of the two. *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). "The credible testimony of

- 5 -

one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). Identity is a question of fact for the jury to determine after consideration of all the evidence. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).

According to Tennessee Code Annotated section 39-16-603, "it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person: (A) knows the officer is attempting to arrest the person; or (B) has been arrested." T.C.A. § 39-16-603(a)(1)(A), (B) (1995). Additionally, "[i]t is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." *Id.* § 39-16-603(b)(1).

According to Tennessee Code Annotated section 55-10-616, "[i]t is unlawful for any person to operate any motor vehicle in this state while the judgment or order of the court prohibiting the operation remains in effect." T.C.A. § 55-10-616(a).

In the light most favorable to the State, it is clear from the record that Deputy Jordan attempted to arrest the driver of the gold Chevrolet Caprice, whom he identified as the Defendant. The vehicle involved in this incident was registered to the Defendant's cousin, and the Defendant knew of the vehicle's existence after visiting his cousin's house previously. The Defendant engaged Deputy Jordan in a high-speed vehicle chase and ignored Deputy Jordan's signal to pull over. The Defendant drove the Caprice to his cousin's house where the Caprice was parked earlier that same day. After the vehicle chase ended, Deputy Jordan witnessed the Defendant exit the driver's side door of the Caprice, look at Deputy Jordan, flee on foot, and disappear into a residential backyard. Deputy Jordan testified that he knew who the Defendant was as soon as he exited the Caprice because he has known the Defendant for many years. Deputy Jordan explained that at that moment, visibility was fine, that the sun had not yet set, and that he was about fifteen to twenty yards away from the Defendant. It was reasonable for the jury to conclude that Deputy Jordan could positively identify the Defendant. Accordingly, the evidence was sufficient to support the evading arrest convictions.

At trial, the Defendant stipulated to being a motor vehicle habitual offender. Deputy Jordan made positive identification of the Defendant as the operator of the Caprice upon seeing the Defendant exit the driver's side door of the Caprice. Accordingly, the evidence was sufficient to support the operating a motor vehicle as a habitual traffic offender conviction.

- 6 -

## II. Sentencing

The Defendant argues that the trial court abused its discretion by imposing the maximum available sentence. He contends that he should be given a shorter sentence because of Tennessee's limited ability to house prisoners.

This court reviews challenges to the length of a sentence under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentences that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Even if the trial court "recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The trial court is "to be guided by—but not bound by—any applicable enhancement or mitigating factors when adjusting the length of a sentence." *Bise*, 380 S.W.3d at 706. Further, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* A sentence imposed by the trial court that is within the appropriate range should be upheld "[s]o long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute." *Id.* The appealing party bears the burden of proving that the sentence was improper. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the sentence, the trial court must consider: (1) any evidence received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b). "The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(4), (5).

The decision to impose consecutive sentences rests within the sound discretion of the trial court. *State v. Hayes*, 337 S.W.3d 235, 266 (Tenn. Crim. App. 2010); *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999). Our supreme court held that the

standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). To impose consecutive sentencing, the trial court must find by a preponderance of the evidence at least one of several factors, including that "[t]he defendant is an offender whose record of criminal activity is extensive" or "[t]he defendant is sentenced for an offense committed while on probation." T.C.A. § 40-35-115(b). The trial court may properly impose a consecutive sentence upon the finding of just one of the criteria listed in the statute. *State v. Alder*, 71 S.W.3d 299, 307 (Tenn. Crim. App. 2001). Consecutive sentencing is also "guided by the general sentencing principles providing that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'" *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (citing T.C.A. §§ 40-35-102(1), -103(2)).

Here, the Defendant was convicted of evading arrest while operating a motor vehicle, which is a Class E felony that is punishable by a sentence of one to two years as a Range I offender. T.C.A. §§ 39-16-603(b)(3); 40-35-112(a)(5). The Defendant was also convicted of operating a motor vehicle as a habitual traffic offender, which is also a Class E felony that is punishable by a sentence of one to two years as a Range I offender. *Id.* §§ 55-10-616(b); 40-35-112(a)(5). The trial court sentenced the Defendant to the upper bounds of each sentencing range and ran the felony convictions consecutively to one another, imposing an effective four-year sentence of incarceration.

Although the Defendant argues that the trial court abused its discretion, we hold that the trial court acted well within its discretion when sentencing the Defendant. At the sentencing hearing, the Defendant's presentence report was introduced, which showed that the Defendant had numerous arrests, convictions, and failed attempts at probation. The trial court found that no mitigating factors and three enhancement factors applied to the Defendant: he had a criminal history, failed to abide by the requirements of probation many times, and committed the instant offenses while on probation and bail. *See id.* §§ 40-35-113, -114(1), -114(8), -114(13). The trial court also found two criteria for imposing consecutive sentences: he was on probation and out on bail when he committed the instant offenses and his criminal record was extensive—over fifty prior convictions. *See id.* 40-35-115(b)(2), (6). The evidence introduced at the sentencing hearing supports the trial court's findings. Accordingly, we conclude that the trial court did not err in sentencing the Defendant.

## CONCLUSION

Based upon the foregoing reasons, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE